UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE JACKSON, et al.,

Plaintiffs,

v.

PRIORITY WASTE LLC, et al.,

Defendants.

Case No. 25-cv-11867

Honorable Robert J. White

**OPINION AND ORDER (1) DENYING DEFENDANTS' MOTION FOR SANCTIONS AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR COURT-AUTHORIZED NOTICE**

This collective action arises under the Fair Labor Standards Act (FLSA) and involves Defendants Priority Waste LLC and Priority Waste Resources, LLC's alleged failure, as joint employers, to pay overtime to Plaintiffs Andre Jackson, Davon Arbitter, and similarly situated parties.[1] Priority Defendants provide trash collection, disposal, and related services in Michigan, Indiana, and Ohio. Jackson

[1] In this opinion, Priority Waste LLC is referred to as Priority Waste, Priority Waste Resources, LLC as Priority Resources, and these parties collectively as Priority Defendants. And given the allegations that Priority Defendants acted as joint employers in this case, certain facts relating to "Priority" generally implicate both Defendants.

worked for Priority Defendants as a truck driver from October 2023 to October 2024, and Arbitter as a truck loader from July 2024 to August 2025. (ECF No. 60).

Before the Court is Plaintiffs' motion for court-authorized notice to potential opt-in plaintiffs.[2] (ECF No. 44). Also before the Court is Priority Defendants' motion for sanctions pursuant to 28 U.S.C. § 1927. (ECF No. 66). The Parties fully briefed the motions, and the Court will decide them without oral argument pursuant to Local Rule 7.1(f)(2). For the reasons provided, the Court (1) denies the motion for sanctions and (2) grants in part and denies in part the motion for FLSA notice. Concerning the latter decision, the Court will facilitate notice to potential plaintiffs, but only after certain revisions to Plaintiffs' proposed notice form.

## I. Background

Plaintiffs assert one cause of action against Priority Defendants, as joint employers, for failing to pay overtime under the FLSA. (ECF No. 60, PageID.890-905). Plaintiffs allege that they and similarly situated employees worked overtime

[2] This motion was technically filed solely by Plaintiff Jackson before he amended the complaint to add Plaintiff Arbitter. Likewise, the response thereto was filed solely by Priority Waste LLC before Priority Resources' addition to the suit. But both sides confirmed at a status conference that the notice issue was largely unaffected by these additions, and neither Plaintiffs nor Priority Defendants took the offer to file amended or supplemental briefing. The Court will therefore refer to the motion, the response, and the parties' arguments therein as belonging to Plaintiffs or Priority Defendants, respectively, instead of to only Jackson or Priority Waste.

for which they were not compensated.[3] They specifically assert that Priority Defendants automatically deduct a half-hour from employees' hourly pay each workday for a meal break despite knowing that "Plaintiffs and the Putative Collective Members regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA." According to Plaintiffs, this practice violates the FLSA because it improperly denies employees overtime wages for those on-duty meal breaks when they worked more than 40 hours. (ECF No. 60, PageID.897-99, 901).

Plaintiffs now move for court-authorized notice to the following group of potential opt-in plaintiffs: "all current and former Drivers and Loaders who worked for [Priority Defendants] anywhere in the United States, at any time from June 20, 2022[,] through the final disposition of this matter[.]" (ECF No. 44, PageID.302 (footnote omitted)). And Priority Defendants move to sanction Plaintiffs and require repayment for the efforts to defend Plaintiff Jackson's October 2025 motion for leave to amend the complaint. (ECF No. 66).

---

[3] Plaintiffs allege that although specific job titles and duties among the proposed collective class may differ, Priority Defendants applied the same unlawful wage practices to all employees involved in the collection, transportation, and disposal of waste (i.e., both drivers and loaders). (*See* ECF No. 60, PageID.897-98, 906).

## II. Sanctions

Plaintiff Jackson, who initiated this action as the only named plaintiff, moved for leave to amend the complaint on October 3, 2025. (ECF No. 29). The proposed second amended complaint sought to add: (1) two new named Plaintiffs, Plaintiff Arbitter and Craig Rucks, a driver who worked in Indiana; (2) a new defendant, Priority Resources, as a joint employer with shared responsibility for the unlawful conduct at issue, and (3) a second cause of action for violations of Indiana's Wage Payment Statute (the IWPS), Ind. Code § 22-2-5-1, *et seq.*, on behalf of Rucks and the subclass of drivers and loaders who worked or work in Indiana only. (*See* ECF No. 29-1).

In contesting Jackson's motion, Priority Waste argued in relevant part that the proposed amended complaint failed to state a claim under the IWPS because "[t]here is not a single allegation in the proposed Second Amended Complaint as to whether any class member—including Rucks—is currently or will be employed by Priority Waste or Priority Waste Resources at the time of filing, the circumstances of any class member's termination, or any effort to define the class in a manner that accounts for its members' employment status." (ECF No. 32, PageID.235); *see also St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002) ("the Wage Payment Statute references current employees [or] those who have voluntarily left employment"). The Court granted leave to amend following a

hearing (*see* ECF Nos. 58, 62), but Plaintiffs' amended complaint ultimately omitted the proposed IWPS claims, (*see* ECF No. 60).

An attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Section 1927 applies even in the absence of any conscious impropriety." *Bojicic v. Dewine*, 145 F.4th 668, 673 (6th Cir. 2025) (cleaned up). "Thus, the proper inquiry is not whether an attorney acted in bad faith; rather, a court should consider whether an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Id.* (cleaned up). "A legal contention is frivolous if it is obviously without merit under existing law and unsupported by a good-faith argument to change or extend the law." *Id.* (cleaned up).

Priority Defendants argue that they should be reimbursed for the efforts opposing the motion for leave to amend because the proposed IWPS claims—the only contested addition—were meritless and ultimately abandoned once the Court granted leave to amend. In particular, they argue that Plaintiffs' counsel knew or should have known the IWPS claims were frivolous because (1) Rucks was terminated involuntarily and (2) this defect was raised in response to the motion for leave to amend. (ECF No. 66, PageID.961-62, 966-70).

Plaintiffs counter in relevant part that the IWPS claims were "factually supported at the time amendment was sought" and only abandoned "when it became apparent [they were] not viable." (ECF No. 68, PageID.1027). And Plaintiffs' counsel attaches a declaration stating, under penalty of perjury, that (1) Rucks informed counsel that he left work voluntarily during an initial interview, (2) Rucks later confirmed that he voluntarily quit when discussing potential claims under the IWPS, and (3) Rucks informed counsel for the first time in early June 2026 that he now believed he was terminated before quitting. (ECF No. 68-2, PageID.1039-41).

As an initial matter, it is now undisputed that the proposed and abandoned IWPS claims lack merit under the alleged facts of this case because Rucks was terminated involuntarily. The question therefore becomes whether Plaintiffs' counsel knew or should have known the claims were obviously without merit when briefing the motion for leave to amend or at any point before the hearing when he continued to advance the IWPS claims.

Importantly, both the response and reply with respect to Jackson's motion for leave to amend suffered from somewhat poor briefing concerning the IWPS claims, at least concerning the specific defect that Priority Defendants now argue provided actual or constructive knowledge of the claims' frivolousness. First, Priority Waste's response argued that the claims were deficient for lacking specific allegations concerning Rucks' and other Indiana employees' employment status, (*see* ECF No.

32, PageID.234-35), but it never claimed that Rucks in fact was involuntarily terminated. In reply, Jackson merely argued that "[Rucks'] allegations regarding work for which he was not paid are . . . sufficient to state a claim under the IWPS," while agreeing if further specificity was necessary to modify the allegations to exclude any employees whom Priority fired. (ECF No. 34, PageID.246-47, 247 n. 2).

At the motion hearing, defense counsel represented for the first time that Rucks was fired, coming prepared with documentary evidence to that effect. (ECF No. 62, PageID.925). Plaintiffs' counsel, however, countered as follows:

> I've spoken to Mr. Rucks and he has told me that he voluntarily left employment and at the end -- or after he informed Priority Waste that he wished to end his employment, they terminated him or handed him the termination paperwork.
>
> That to me qualifies as a voluntarily -- a voluntary termination rather than involuntary.
>
> *   *   *
>
> Every time I've talked to Mr. Rucks he's told me in no uncertain terms that he voluntarily quit.

(ECF No. 62, PageID.927, 936).

Notably, this tracks with what Rucks told Plaintiffs' counsel in advance of the hearing, per counsel's declaration. (*See* ECF No. 68-2, PageID.1040 ("On or about April 15, 2026, Rucks and I spoke over the phone. I generally updated Rucks on the case and again confirmed that he had quit-not been fired. We discussed some of the

documents produced in the case such as writes up and termination paperwork. Rucks informed me that his recollection of the events were that during a conversation with his manager he quit and then after he had quit, his manager fired him and told him to leave.”)). At the hearing, however, neither side’s counsel knew of specific authority addressing such a fact pattern. (ECF No. 62, PageID.927-28). Given the lack of briefing from either side on the pivotal issue of whether Rucks left work voluntarily or was fired, this was hardly surprising. Accordingly, after a discussion about the parties potentially conferring to pinpoint the precise circumstances under which Rucks left employment and doing further legal research on the fact pattern at issue, the Court granted leave to amend. (ECF No. 62, PageID.932-41).

Under these circumstances, the Court concludes that Plaintiffs’ counsel did not know and could not have known the IWPS claims were *obviously* without merit until June 2026, when Rucks disclosed for the first time, contrary to his earlier representations, the belief that he was fired before quitting. Until this point, it remained an open question whether Rucks had any viable IWPS claims under the fact pattern described at the motion hearing. And once Plaintiffs’ counsel was informed this fact pattern was inaccurate, he appropriately abandoned the IWPS claims. The Court therefore denies Priority Defendants’ motion for sanctions. Nevertheless, if Plaintiffs’ counsel takes further action illustrating improper gamesmanship in this matter, or if subsequent representations to the Court are shown

to be inaccurate, the Court may consider any appropriate remedy, to include sanctions.

## III. FLSA Notice

### A. Legal Standards

The FLSA requires that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Employees can sue for alleged violations of this mandate on "behalf of . . . themselves and other employees similarly situated." *Id.* at § 216(b). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* "Thus—assuming they are 'similarly situated'—other employees become parties to an FLSA suit only if they affirmatively choose to do so." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023).

Although plaintiffs normally "come to the courts, rather than vice versa," the Supreme Court has interpreted the FLSA to grant federal courts an "implied judicial power, in appropriate cases, to facilitate notice of FLSA suits to potential plaintiffs." *Id.* (cleaned up; citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989)).

"[F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. This "strong likelihood" standard requires "a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.*

The Sixth Circuit has likened this standard to the well-known preliminary injunction test, which requires that the "movant demonstrate to a certain degree of probability that [he or] she will prevail on the underlying issue when the court renders its final decision." *Id.* ("A district court's determination to facilitate notice in an FLSA suit [and] a court's decision whether to grant a preliminary injunction . . . are [both] provisional, in the sense that the court renders a final decision on the underlying issue . . . only after the record for that issue is fully developed; yet both decisions have immediate consequences for the parties."). A plaintiff shows a strong likelihood of success when the evidence raises questions "so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Stryker Empl. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023) (defining "strong likelihood of success on the merits" in the preliminary injunction context) (quotation and citation omitted). Such provisional rulings are decided "on the basis of procedures less formal and evidence less complete than in a trial on the merits." *Univ. of Tx. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also*

*Fetch! Pet Care, Inc. v. Atomic Pawz, Inc.*, 170 F.4th 546, 554 (6th Cir. 2026) (citations omitted).

**B. Analysis**

**1. Plaintiffs Have Shown a Strong Likelihood of Similarly**

"[A] 'strong likelihood' of similarity is satisfied when a plaintiff alleges a single FLSA-violating policy, 'and that proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Rayford v. Mobile Phlebotomy of Cent. Mich. LLC*, 729 F. Supp. 3d 724, 728 (E.D. Mich. 2024) (quoting *Dove v. Corewell Health*, No. 23-182, 2023 U.S. Dist. LEXIS 182434, at *6 (W.D. Mich. Oct. 6, 2023)). A named plaintiff must show that his or her position is similar to that of opt-ins, but they need not be identical. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011). Stated differently, similarly situated opt-ins "are those whose causes of action accrued in approximately the same manner as those of the named plaintiff." *Id.*

Multiple factors guide the Court's determination, including: (1) whether opt-in plaintiffs "performed the same tasks and were subject to the same policies . . . as the [named] plaintiffs," *Clark*, 68 F.4th at 1010 (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745-46 (6th Cir. 2019); (2) whether plaintiffs are subject to individualized defenses, *Monroe v. FTS USA, LLC*, 860 F.3d 389, 404 (6th Cir. 2017); (3) whether the named plaintiff submits affidavits from opt-in plaintiffs,

*Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015); and (4) whether there is evidence of a "widespread" plan by the defendant, *id.* No single factor is determinative. Instead, courts endeavor to ensure that "collective litigation would yield 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.'" *Clark*, 68 F.4th at 1012 (citation omitted).

Although an automatic meal break deduction policy is not inherently unlawful under the FLSA, a violation occurs when the employer knows or has reason to know that employees continue working during scheduled meal breaks. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) ("the issue is whether Baptist knew or had reason to know it was not compensating White for working during her meal breaks"); *Dove v. Corewell Health*, No. 23-182, 2023 U.S. Dist. LEXIS 182434, at *6 (W.D. Mich. Oct. 6, 2023) ("[A]n automatic meal break deduction 'does not violate the FLSA so long as the employer accurately records actual hours worked, including any work performed during the lunch period.'") (citation omitted).

Accordingly, "at this stage in the litigation, Plaintiffs must show a strong likelihood that they are similarly situated to their proposed group of potential opt-ins because of [Priority Defendants'] widespread unlawful *application* of its automatic meal break deduction policy—specifically, that [Priority Defendants]

deducted 30-minute unpaid meal breaks from their timesheets when it knew or should have known that these employees worked through their scheduled meal breaks." *Dove*, 2023 U.S. Dist. LEXIS 182434 at *6-7 (emphasis in original). The Court concludes that Plaintiffs have made this requisite showing.

Plaintiffs rely on largely similar declarations from themselves and twelve other opt-ins about their experiences working for Priority Defendants with respect to the automatic meal break deduction policy. (*See* Exs. 1-14 to ECF No. 44). These employees worked out of twelve different facilities spanning Michigan and Indiana, and they all consistently state that (1) they worked as hourly employees in the collection, transportation, and disposal of waste (either as a driver or loader); (2) they regularly worked overtime (i.e., more than 40 hours per week) during the course of their employment; (3) Priority Defendants automatically deducted a thirty-minute meal period from their daily hours; (4) they regularly worked through meal periods; (5) they were never informed of a way to reverse the automatic meal deduction or that they could be paid for the time spent working through these breaks; and (6) Priority Defendants knew they worked through meal periods because (a) their assigned routes were so time-consuming that it was impossible take an uninterrupted thirty-minute lunch break, and (b) Priority Defendants monitored trucks with GPS and therefore would have known if drivers and loaders stopped for 30 minutes to eat.

Furthermore, all but two of the declarants, Plaintiff Jackson and opt-in Adraine Motley, also state that Priority Defendants knew they regularly worked through meal periods because they personally complained to management or HR—to no avail—about having to work through lunch without pay or else not having the time for the scheduled breaks. In contrast, per Jackson, (1) he sometimes stopped for a lunch break less than 15 minutes on certain days when he did not eat while driving or skip lunch entirely, (2) he typically told dispatch when taking these breaks, and (3) Priority Defendants therefore knew that these breaks were not 30 minutes (i.e., that he continued working through at least part of the automatically deducted meal breaks). And Motley, for her part, states that "it seemed like Priority was well aware that the drivers and loaders didn't take breaks and didn't take action to fix it, and because those who complained got in trouble, it seemed pointless for me to complain to anyone about not being able to take meal breaks." (ECF No. 44-2, PageID.333).

Plaintiffs also provide records showing that Priority Defendants never overrode a single automatically-deducted meal period with respect to a sample of over 8,000 individual employee shifts at various facilities between 2022 and 2023. (*See* ECF No. 44-19). And Plaintiffs provide the Priority Waste Employee Handbook, which includes written meal break and overtime policies applicable to

Plaintiffs and the potential opt-ins at all Priority Defendants' Midwest facilities. (*See* ECF No. 44-15).

Critically, Plaintiffs and potential-plaintiff declarants all consistently state under penalty of perjury that: they were hourly workers and regularly worked overtime during the course of their employment; Priority Defendants routinely deducted a 30-minute meal break from their hours-worked even though they rarely if ever were able to stop working for a meal, thus depriving them earned overtime wages; and Priority Defendants assigned routes making it impossible to take these breaks and otherwise utilized GPS tracking to know if a route actually stopped for a break. Between them, the declarants held positions either driving or loading Priority Defendants' waste collection trucks across twelve different facilities spanning Priority's Midwest footprint. And all Priority facilities have the same employee handbook, subjecting all drivers and loaders to the same general policies concerning meal breaks and overtime, regardless of location.[4] Moreover, all but two declarants state that nothing changed even after they complained to management or HR about

[4] Priority Defendants briefly argue that collective action is inappropriate given that the declarants' statements partially contradict Plaintiffs' own evidence from the Priority employee handbook. But to the extent the handbook contradicts the declarants' positions that were never informed of a way to reverse the automatic meal deduction or that they could be paid for the time spent working through these breaks, this seemingly implicates a defense on the merits universally applicable to all Plaintiffs and potential plaintiffs. And certainly such a widely-applicable defense would be more efficiently resolved in one collective action.

Priority Defendants' allegedly-unlawful practice, and the evidence of record supports that Priority Defendants never overrode any automatically-deducted meal period at any of their facilities.

Together, the evidence establishes to a certain degree of probability that Plaintiffs and potential plaintiffs performed substantially similar tasks, were subject to the same policies, and are unified by a common theory underlying their causes of action. First, it is undisputed that all Priority drivers and loaders are generally subject to the same written policies concerning meal breaks and overtime. Next, Plaintiffs sufficiently establish the widespread unlawful application of Priority Defendants' automatic meal break deduction policy—specifically, that Priority Defendants at least should have known that its drivers and loaders regularly worked through their scheduled meal breaks.

Most importantly, the fact that Priority Defendants tracked routes with GPS circumstantially supports that they should have been aware each time a driver or loader did not take a meal break, even without considering the declarants' other bases for Priority Defendants' knowledge. And the fact that nothing changed at any of the numerous facilities where employees complained, without any automatically-deducted meal periods ever being overridden, further evinces a widespread plan to underpay loaders and drivers across all Priority Defendants' locations. Likewise for the fact that the assigned routes were purportedly so demanding as to effectively

preclude the ability to take a meal break at each of the twelve different facilities included in the supporting declarations. Plaintiffs have therefore satisfied their burden to show a strong likelihood that they are similarly situated to potential plaintiffs.

Priority Defendants offer several arguments that Plaintiffs do not meet their burden. All lack merit.

Priority Defendants first argue that Plaintiffs and potential opt-ins cannot be similarly situated because of material factual differences among their specific job titles and duties, routes and schedules, work locations and managers, and rates of compensation. According to Priority Defendants, these differences implicate individualized defenses that make collective action inappropriate. (ECF No. 53, PageID.829-35).

Notably, the specific job titles among the driver declarants vary somewhat, including general "Driver[s]," "Front Load Driver[s]," "Lead Driver[s]," "Residential Driver[s]," "Rear Load Driver[s]," and "Roll Off Driver[s]." The specific hourly rate of pay also varies among these specific positions. (*See* Exs. 1-14 to ECF No. 44). And in Priority Waste's answers to interrogatories, the Chief Operating Officer additionally verified that material discrepancies exist between different drivers' and loaders' routes, duties, schedules, locations, and compensation. (ECF No. 53-3, PageID.860-61, 866).

"Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010. "Whether other employees are subject to individualized defenses . . . can also affect whether particular employees are similarly situated for purposes of sending notice." *Id.*

Relatedly, the Sixth Circuit has rejected reliance on a purportedly uniform policy against paying overtime where one group of employees "sold a different product and started later in the day." *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 747 (6th Cir. 2019); *see also id.* ("A common policy cannot overcome the factual differences between the [two groups of employees] (what they sold and when they started work), which goes to determining the heart of the claim (the total hours worked each week)." And in *Creely v. Hcr ManorCare, Inc.*, 920 F. Supp. 2d 846 (N.D. Oh. 2013), the Court concluded that varied employment settings and individualized defenses both weighted against certification of a collective action in relevant part because (1) "application of the [auto-deduct] policy varied based on several factors, including job duties and individual managers at the various [healthcare] facilities"; (2) the policy was implemented in a decentralized manner by individual supervisors across different facilities; and (3) the knowledge and

testimony of each individual manager was highly relevant to the defendants' defenses. *Id.* at 852-57.

However, both *Pierce* and *Creely* addressed the issue of final certification following the issuance of notice to potential plaintiffs and significant discovery. At this stage, however, courts cannot "determine—in absentia—whether other employees are 'actually' similarly situated to the original plaintiffs." *Clark*, 68 F.4th at 1010. Further, individual factual differences in job duties, hours worked, and the like do not necessarily preclude FLSA notice. *See Perry v. Hardeman Cnty. Gov't*, No. 19-01106, 2023 U.S. Dist. LEXIS 167579, at *27 (W.D. Tenn. Sept. 20, 2023) ("For claims like this one that apply to Plaintiffs as a whole, Plaintiffs must introduce substantial evidence to show how a single, common policy applied to each Plaintiff and resulted in a violation of the FLSA, despite the very different nature of each Plaintiff's employment with Hardeman County."); *Miller v. SBK Delivery, LLC*, No. 21-4744, 2024 U.S. Dist. LEXIS 35226, at *10 (S.D. Oh. Feb. 29, 2024) ("[S]ome individual factual differences in the number of hours worked are inherent in proceeding collectively; it will be the rare case where every opt-in worked the same amount of overtime. But, where individual factual differences in the number of hours worked precludes the ability to rely on representative evidence, employees are not similarly situated."). Accordingly, the Court concludes that (1) *Pierce* and *Creely* are both distinguishable from the instant case and (2) Plaintiffs have sufficiently

demonstrated a common FLSA-violating policy notwithstanding some differences among Plaintiffs' and potential plaintiffs' employment with Priority Defendants.

As an initial matter, it is undisputed that all Priority drivers and loaders are subject to the same general policies as to both timekeeping and compensation. Indeed, Priority Defendants effectively concede that their "companywide policies . . . apply to all drivers and loaders," and that all drivers and loaders are paid hourly. (*See* ECF No. 53-2, PageID.861).

While Priority Defendants emphasize differences among drivers' and loaders' rates of pay, this is relevant to the amount of damages potentially available to individual employees but has no material impact on Plaintiffs' unified theory underlying the claimed FLSA violations. *See Hester v. Park Cmty. Credit Union, Inc.*, 818 F. Supp. 3d 888, 897 (W.D. Ky. 2026) ("plaintiffs are similarly situated where 'their claims [a]re unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'") (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)). Specifically, a driver or loader's rate of pay does not affect whether Priority Defendants knew or should have known that the employee regularly worked through meal breaks without overtime compensation.

Next, concerning differences between employees' locations and managers with respect to the allegedly-unlawful policy, Priority Waste's answers to interrogatories state:

> Jackson and the opt-in plaintiffs worked at various Priority locations and reported to different managers. Priority anticipates that, while it has companywide policies that apply to all drivers and loaders, those policies are applied in different ways depending on managerial styles.

(ECF No. 53-2, PageID.861).

Apart from this scant evidence, however, nothing in the record supports that individual managers at Priority Defendants' various locations in fact applied the policies differently. Rather, the evidence at this stage largely shows otherwise. Specifically, the declarations consistently describe a common policy that allegedly deprived the declarants overtime pay notwithstanding the different locations and managers involved. And again, the fact that nothing changed at any of the numerous facilities where employees complained, without any automatically-deducted meal periods ever being overridden, evinces a widespread plan to underpay loaders and drivers across all Priority Defendants' locations. As does the fact that the assigned routes were purportedly so demanding as to effectively preclude the ability to take a meal break at each of the twelve different facilities included in the supporting declarations. *Creely*, which was decided after discovery and included substantial testimony supporting that individual managers applied the relevant policy in a decentralized manner, is therefore distinguishable from the present case. *See also*

*Hester*, 818 F. Supp. 3d at 897 ("In the event that individual differences do overcome the similarities between Plaintiffs and other opt-ins, [Defendant] 'will have another bite at the apple to rebut this at the certification stage.' Accordingly, the Court concludes that Plaintiffs have carried their burden of showing a 'strong likelihood' that they and other potential opt-ins are similarly situated, even if not identically situated.") (citation omitted; alteration in original).

Next, concerning employees' routes, schedules, and duties, the differences identified in Defendant Priority Waste LLC's answers to interrogatories (ECF No. 53-3, PageID.860-61) admittedly mirror those that precluded collective treatment in *Pierce*. But like *Creely*, *Pierce* was decided with the benefit of discovery after the initial notice ruling.

Further, it is undisputed that all Plaintiffs and potential plaintiffs performed much of the same general duties as far as assisting in the collection, transportation, and disposal of waste (either as a driver or loader) along Priority Defendants' assigned routes. And the declarants, regardless of the differences in their specific titles, routes, discrete duties, and schedules, consistently state that (1) their assigned routes were scheduled as to essentially preclude the ability to stop for a meal break; (2) Priority Defendants tracked these routes via GPS to know if they ever stopped for a meal break; and (3) Priority Defendants routinely deducted a 30-minute meal

break from their hours-worked even though they rarely if ever were able to stop working for a meal, thus depriving them earned overtime wages.

Because this common theory would apply largely regardless of when a driver or loader starts and ends the day, how many collection stops they must take, and whether they have additional discrete duties beyond just driving or loading along Priority's routes, the Court concludes at this stage that Plaintiffs' and prospective plaintiffs' causes of action accrued in approximately the same manner even though they are not identically situated (i.e., despite these differences). At most, it is plausible that "differences in routes lead to different lunch-break practices," (*see* ECF No. 53, PageID.52), which could cause problems in terms of reliance on representative testimony given the essential nature of the claims at issue. But there is no direct evidence in the record that different types of loaders and drivers in fact had different lunch break practices. Rather, the declarants, who include a loader and various types of drivers, consistently declare having the same essential lunch break practice—rarely if ever stopping for any lunch break due to the time required to complete their routes. And even accepting that this and the other differences identified implicate individualized defenses, the Court concludes that such defenses—particularly when they are ill-defined in the briefing at this stage—do not outweigh Plaintiffs' substantial evidence of similarity already discussed, at least for the purpose of facilitating notice.

In sum, the Court rejects Priority Defendants' argument and concludes that the similarities sufficiently outweigh the differences in this case as to warrant proceeding collectively at this stage. *See Hester*, 818 F. Supp. 3d at 897 ("plaintiffs are similarly situated where their claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct") (cleaned up); *id.* ("In the event that individual differences do overcome the similarities between Plaintiffs and other opt-ins, [Defendant] 'will have another bite at the apple to rebut this at the certification stage.'") (citation omitted; alteration in original).

Priority Defendants also argue that the various declarations on which Plaintiffs rely should be disregarded to the extent they include unsupported legal conclusions, hearsay, and facts beyond the declarants' personal knowledge. (ECF No. 53, PageID.835-39). The Court agrees in part, but this does not defeat Plaintiffs' showing of a strong likelihood of similarity.

Pursuant to Fed. R. Civ. P. 54(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See also Antunes v. Gerdau MacSteel, Inc.*, No. 22-1805, 2023 U.S. App. LEXIS 12152, at *3 (6th Cir. 2023) (unpublished) ("Conclusions of law or ultimate fact are not facts and should be disregarded.");

*Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 515-16 (6th Cir. 2022) (excluding affidavit in part because it "contains extensive hearsay and testimony about which Blount had no personal knowledge"). But in deciding a motion for preliminary injunction, which is akin to the provisional decision concerning FLSA notice at issue here, "a court may consider the entire record, including affidavits and other hearsay evidence." *Tactical Edge, LLC v. Garland*, 696 F. Supp. 3d 460, 463 (M.D. Tenn. 2023). "[T]he Court may rely on affidavits and hearsay materials which would not be admissible evidence . . . if the evidence is appropriate given the character and objectives of the . . . proceeding." *Id.*

As an initial matter, the Court does not accept the declarants' statements to the extent they opine on conclusions of law or ultimate fact to be determined by the Court, such as whether Priority Defendants knew or should have known that Plaintiffs and potential plaintiffs worked through their scheduled meal breaks. *See Dove*, 2023 U.S. Dist. LEXIS 182434 at *7. Similarly, the Court will disregard the various declarants' statements to the extent they described other employees' experiences across the board at all Priority Defendants' facilities. *See Stodolak v. Tiara Yachts, Inc.*, 25-98, 2025 U.S. Dist. LEXIS 269052, at *18-19 (W.D. Mich. 2025) ("Plaintiffs' declarations also include conclusory statements regarding the . . . policies and practices in departments in which they have not worked; these statements represent hearsay for which Plaintiffs have not even attempted to

establish an exception. . . . The Court [therefore] concludes that Plaintiffs have failed to show a 'strong likelihood' of substantial similarly as to employees in these other departments.").

Nevertheless, each declarant's statements regarding their own employment experiences are undoubtedly proper for consideration. As described earlier, these individual experiences were consistent across twelve different facilities spanning Priority's Midwest footprint, and these consistent experiences—together with Plaintiffs' other evidence—circumstantially support Priority Defendants' constructive knowledge that its drivers and loaders regularly worked through their scheduled meal breaks pursuant to a companywide policy.

Although Plaintiffs do not provide declarations specific to every Priority facility in existence, which the proposed collective would encompass, the consistent declarations from so many different locations across multiple states suffice at this stage to show the widespread application of a companywide policy, particularly considering the more flexible evidentiary requirements applicable to a provisional ruling like that here. *See Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 749-50 (M.D. Tenn. 2018) (authorizing notice to employees at 800 stores based on the consistent declarations from plaintiffs who had worked at eight stores). Accordingly, the Court reiterates that the declarations, together with Plaintiffs' other evidence, sufficiently establish the widespread unlawful application of Priority Defendants'

automatic meal break deduction policy—specifically, that Priority Defendants at least should have known that its drivers and loaders regularly worked through their scheduled meal breaks.

Given the foregoing, the Court concludes that facilitating notice to potential plaintiffs is warranted here.

### 2. The Notice Form Must be Partially Revised

Court-authorized notice of a collective action under the FLSA must be "timely, accurate, and informative." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989). Priority Defendants raise several objections to Plaintiffs' proposed notice form. (ECF No. 53, PageID.839-42).

First, Priority Defendants argue that the notice form is inaccurately directed to all current and former hourly Priority employees, far broader than the collective of drivers and loaders at issue in the operative complaint. Priority Defendants also argue that the notice form is misleading to the extent it provides that the Court will decide who wins the lawsuit despite this being a jury-tried case. Concerning these issues, however:

> Plaintiffs agree to modify the notice to correctly reference the parties as plead in Plaintiffs' Second Amended Collective Action Complaint and to identify the Putative Collective Members as "Drivers" and "Loaders" instead of hourly non-exempt employees. Plaintiffs further agree to clarify that it is the Court or a jury that will ultimately determine the merits of Plaintiffs' claims.

(ECF No. 61, PageID.916).

Considering the parties' positions, and to ensure the accuracy of notice with respect to the operative complaint filed June 2, 2026, the Court concludes that Plaintiffs must revise notice as directed to "[a]ll current and former hourly-paid Drivers or Loaders who worked for Priority Waste, LLC or Priority Resources LLC[5] at any time within the last three years," instead of to all "current and former hourly-paid employees who worked for Priority Waste, LLC" during that time. (*See* ECF No. 44-20, PageID.785). The proposed notice also currently states: "The Lawsuit is in its early stages. The Court has not decided who will win the Lawsuit, but has authorized this Notice to inform you of your right to join . . . ." (ECF No. 44-20, PageID.785). This must be revised to clarify that "[t]he merits of this lawsuit have not yet been decided by the Court or a jury, but the Court has authorized this notice. . . ." And Plaintiffs must follow this sentence explicitly clarifying, "The Court takes no position on the merits of Plaintiffs' claims or Defendants' defenses."

---

[5] Priority Defendants argue in part that Plaintiffs' notice is misleading or inaccurate because all drivers and loaders in the proposed collective were employed by Priority Resources, not Priority Waste. But both the notice form and Priority Defendants' response here were drafted and filed before Jackson amended the complaint to assert the collective claims against both Priority Defendants as joint employers. Considering the allegations of joint employment, which Priority Defendants have not substantively refuted since the June 2026 amendment, the notice must include both companies as articulated above. And Plaintiffs are further directed to revise the notice as necessary to otherwise clarify the joint-employment relationship now asserted in this case. Relatedly, Plaintiffs must revise the notice to account for the addition of Plaintiff Arbitter since it was drafted.

Priority Defendants further object to the one-sided nature of Plaintiffs' proposed description of the lawsuit. "Courts should ensure a balanced statement of the claims at issue in an FLSA opt-in notice." *Stodolak*, 2025 U.S. Dist. LEXIS 269052 at *20; *see also Knispel v. Chrysler Grp. LLC*, No. 11-11886, 2012 U.S. Dist. LEXIS 21188, at *19 (E.D. Mich. Feb. 21, 2012) ("The Court also concludes that the notice should have a more balanced statement of Defendant's position in this litigation—consisting of more than a single line indicating Defendant denies the allegations."). Here, the notice form includes three paragraphs summarizing the claims but only a single paragraph detailing Priority's defenses. (ECF No. 44-20, PageID.785). Accordingly, "[t]he parties will be ordered to meet and confer on a revised notice in which [Priority Defendants] may submit a statement of [their] position similar in length to the statement provided by Plaintiffs." *See Stodolak*, 2025 U.S. Dist. LEXIS 269052 at *20-21.

Next, Priority Defendants argue that the proposed notice improperly renders legal advice by discussing implications of the FLSA's statute of limitations and potential plaintiffs' right to file their own independent lawsuit if they decide not to opt in. But the complained-of statements make clear that individuals need not opt in and may proceed individually, and the statements appear to accurately describe the legal rights of and consequences for those who do (or do not) opt in.

Accordingly, the Court rejects Priority Defendants' position to the extent they argue that these provisions improperly communicate encouragement to join the suit or any approval of the suit on its merits.[6] Rather, the legal advice claimed by Priority Defendants to be improper is necessary to fully inform potential plaintiffs of the rights and consequences implicated herein. *See Hoffmann*, 493 U.S. at 170 (notice must ensure that potential plaintiffs "can make informed decisions about whether [or not] to participate"); *Tooker v. Blujay Sols., Inc.*, No. 22-455, 2022 U.S. Dist. LEXIS 248147, at *18 (W.D. Mich. Dec. 12, 2022) ("The purpose of notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit.") (citation omitted). This conclusion is particularly warranted given that Priority Defendants' argument concerning legal advice in the proposed notice is wholly conclusory, without any supporting authority or even a cursory explanation of why such provisions are improper.

Priority Defendants relatedly object to the repeated references to potential plaintiffs' options and the deadline by which to opt in, arguing that this repetition could be construed as communicating the Court's encouragement to join the suit or approval of the suit on its merits. Regarding any concern about notice communicating approval on the merits, *see* footnote 6. Further, having reviewed

[6] Any concern about notice communicating approval on the merits is sufficiently addressed by the Court's earlier revision to explicitly state that it takes no position on the merits of Plaintiffs' claims or Priority Defendants' defenses.

Plaintiffs' proposed notice form in full, the Court concludes that the multiple references to the opt-in deadline and statements concerning potential plaintiffs' options are accurate, appropriate, and not signaled so aggressively as to encourage opting in. Nevertheless—in the abundance of caution and given that certain revisions are already warranted—Plaintiffs must provide the following disclaimer at the end of Section 1 (Why Are You Getting This Notice?) to their revised notice form: "Whether to join this Lawsuit is an individual decision and this reminder shall not be read as the Court encouraging or discouraging anyone from joining this lawsuit."

Lastly, Priority Defendants argue that the notice's references concerning Plaintiffs' counsel are confusing to the average employee. The Court disagrees, concluding that the notice accurately informs potential plaintiffs of counsel's role in this collective action as necessary for them to make informed decisions in this case. But again, in the abundance of caution and given that certain revisions are already warranted, Plaintiffs must clarify in their revised notice the relationship between the two firms representing them and the proposed collective (i.e., whether one firm is lead counsel and the other merely local counsel).[7]

---

[7] Assuming that the firm for which address and contact information is provided in the proposed notice is acting as lead counsel in charge of prosecuting this case, the revised notice need not provide the same for the other firm.

In sum, given Priority Defendants' partially-meritorious objections and the need to account for the changes since Plaintiffs amended the complaint, the Court concludes that the aforementioned revisions are necessary to ensure notice is timely, accurate, and informative concerning the decision about whether to opt in to this collective action. Upon submission of the requisite revisions, notice is otherwise authorized pursuant to the form and procedures Plaintiffs request.

* * *

IT IS HEREBY ORDERED that Priority Defendants' motion for sanctions (ECF No. 66) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion for FLSA notice (ECF No. 44) is GRANTED IN PART AND DENIED IN PART, as follows:

1. The motion is GRANTED to the extent it seeks authorization for court-facilitated notice to potential plaintiffs of this collective action. IT IS ORDERED that Priority Defendants must provide Plaintiffs the names, last known postal addresses, last known email addresses, and last known phone numbers of all members of the putative FLSA collective on or before September 15, 2026.
2. The motion is DENIED to the extent it seeks approval of Plaintiff's' proposed notice form. IT IS ORDERED that Plaintiffs must revise their proposed notice form only as specified in this opinion and order.

3. The Court otherwise approves the provisions of Plaintiffs' proposed notice form; the Court also approves Plaintiffs' proposed notice distribution plan.

IT IS FURTHER ORDERED that, in addition to those revisions specified by the Court, the parties shall meet and confer so that Priority Defendants can include in the revised notice a statement of their position on the lawsuit in approximately equal length to Plaintiffs' position. Plaintiffs' revised notice, including the revisions specifically ordered herein and any reached after the parties' conference, is due as soon as reasonably practical and no later than September 18, 2026. If the parties cannot agree on a description of the lawsuit that gives each side roughly equal treatment by this date, they each must file their proposed revision by the same date for the Court to determine appropriate language.

IT IS FURTHER ORDERED that upon the Court's approval of Plaintiffs' revised notice form, Plaintiffs' shall distribute notice following the procedures set forth in their proposed notice distribution plan.

SO ORDERED.

Dated: September 2, 2026

s/Robert J. White
Robert J. White
United States District Judge